UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| JULIO POLANCO GOMEZ, et al., | : : | CASE NO. 1:21-cv-01701 |
| | : | OPINION & ORDER |
| Plaintiffs, | : : | [Resolving Doc. 1] |
| v. | : : | |
| MERRICK GARLAND, et al., | : : | |
| Defendants. | : : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

With this case, Petitioners Julio Polanco Gomez and Anny Tejeda Lluberes challenge the Board of Immigration Appeals decision finding that Petitioner Polanco earlier entered into a fraudulent marriage with Prisca Yulkenia Made and finding that this earlier arguably sham marriage disqualified Polanco from residency.[1]

Defendants oppose.[2]

For the following reasons, the Court **ORDERS** Defendants to vacate the decision denying Petitioners' Form I-130, Petition for Alien Relative and find Petitioner Polanco's prior marriage bona fide.

I.   Background

Dominican Republic citizen Julio Polanco Gomez met his first wife, Prisca Yulkenia Made, in December 2006.[3] Polanco moved in with Made, her three children from prior

---

[1] Docs. 1, 16, 19.
[2] Docs. 17, 18.
[3] Doc. 14-1 at 52.

Case No. 1:21-cv-01701
GWIN, J.

relationships, and her father in New York City.[4] In July 2007 Polanco and Made married.[5] The marriage was consummated but the two did not plan to have children together as both Polanco and Made had children from previous relationships.[6]

In March 2008, Made filed a Form I-130, Petition for Alien Relative on behalf of Polanco and Polanco was granted conditional lawful residency.[7] In September 2008, Polanco and Made began experiencing marital difficulties due to financial hardship and Made's infidelity.[8] Made and Polanco separated permanently in December 2009 and divorced in March 2012.[9] Made and Polanco had been married about five years.

Polanco and Anny Tejeda Lluberes met as teenagers while both still lived in the Dominican Republic.[10] Before meeting Made, Polanco fathered a child with Tejeda in April 2006.[11] Polanco and Tejeda were not in a relationship at the time. Polanco and Tejeda continued to co-parent their child and reconnected romantically when Polanco and Made began experiencing marital difficulties.[12] Polanco and Tejeda had a second child together in late 2010.[13] In November 2013, Polanco and Tejeda began living together.[14] In February 2015, Polanco and Tejeda married.[15]

In March 2015, Tejeda filed a Form I-130, Petition for Alien Relative on behalf of Polanco with the United States Citizenship and Immigration Services ("USCIS").[16] This is

---

[4] *Id.*
[5] *Id.* at 53.
[6] *Id.* at 53, 62.
[7] *Id.* at 222.
[8] *Id.* at 53, 63.
[9] *Id.* at 53-54, 63, 234.
[10] *Id.* at 54-55, 59.
[11] *Id.* at 55, 59.
[12] *Id.* at 55, 59-60.
[13] *Id.* at 60, 124.
[14] *Id.* at 55, 60.
[15] *Id.* at 181. Tejeda and her previous husband, Leonel Cuevas, divorced in November 2014. *Id.* at 193-194.
[16] *Id.* at 164-200. In September 2016, Tejeda and Polanco interviewed with the USCIS. *Id.* at 208-210.

Case No. 1:21-cv-01701
GWIN, J.

the petition at issue in this case. In July 2017, USCIS issued a Notice of Intent to Deny ("NOID") telling Petitioners that USCIS believed Polanco earlier entered into a fraudulent marriage with Made.[17] In August 2017, Tejeda responded to the NOID.[18] In January 2018, Petitioners' I-130 Petition was denied by USCIS.[19] USCIS found the marriage between Tejeda and Polanco was bona fide but found that Polanco had previously entered into a fraudulent marriage with Made.[20]

USCIS's primary concern seems to be that Polanco had children with Tejeda prior to and during his marriage to Made, and Polanco did not have children with Made.[21] USCIS also noted Polanco and Tejeda took a trip the Dominican Republic in 2009, when they were both legally married to other individuals. Finally, USCIS said Polanco failed to show joint tenancy, property ownership, or comingled financial resources with Made.

In October 2018, the Board of Immigration Appeals ("Board") affirmed USCIS's decision.[22] In addition to stating they agree with the reasons set forth in the USCIS decision, the Board specifically pointed to three factors in its denial of Petitioners' appeal: (1) the timing of the Petitioners' children and marriages to others; (2) Petitioners' alleged omissions of children on subsequent immigration applications; and (3) discrepancies in the addresses and dates provided by Petitioners.[23]

In August 20121 Petitioners filed the current complaint seeking relief under the Administrative Procedure Act.[24]

---

[17] *Id.* at 158-163.
[18] *Id.* at 136-157. This response included a brief from Tejeda's attorney, sworn affidavits from Plaintiffs, a statement from Made, Made's naturalization and birth certificates, insurance and bank documents, and Polanco's passport.
[19] *Id.* at 125-132.
[20] *Id.*; *see* 8 U.S.C. § 1154(c) (INA § 204(c)).
[21] Doc. 14-1 at 125-132.
[22] *Id.* at 2-5.
[23] *Id.* at 5.
[24] Doc. 1.

- 3 -

Case No. 1:21-cv-01701
GWIN, J.

## II. Legal Standards

### A. Administrative Procedure Act Standard of Review

USCIS's denial of a Form I-130, Petition for Alien Relative may be reviewed by a court under the Administrative Procedure Act ("APA").[25] Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority or limitations."[26]

"An agency decision is arbitrary and capricious if the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision."[27] The "agency must articulate a rational connection between the facts found and the choice made, and must provide something in the way of documentary support for its action."[28]

A court's review under the APA should be "searching and careful," but it is not de novo.[29] A court "cannot reweigh the evidence if the agency's conclusion was reasonable."[30]

Where—as here—the Board of Immigration Appeals "reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the court] review[s] the [Board's] decision as the final agency determination."[31] However, "[t]o the extent the [Board] adopted the immigration judge's reasoning" the court "also reviews the immigration judge's decision."[32]

---

[25] *See Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006).
[26] 5 U.S.C. § 706(2)(A).
[27] *Daraghma v. U.S. Citizenship & Immigr. Servs.*, 228 F.Supp.3d 818, 822 (N.D. Ohio 2017).
[28] *GTE Midwest, Inc. v. F.C.C.*, 233 F.3d 341, 345 (6th Cir. 2000) (internal citations omitted).
[29] *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).
[30] *Daraghma*, 228 F.Supp.3d at 822.
[31] *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).
[32] *Id.*

- 4 -

Case No. 1:21-cv-01701
GWIN, J.

### B. Substantial and Probative Evidence Standard

A Form I-130, Petition for Alien Relative will not be approved if the person seeking citizenship through marriage is determined to have previously married "for the purpose of evading the immigration laws."[33] In order to deny a petition on these grounds, the USCIS must find "substantial and probative evidence" documented in the record that the beneficiary's prior marriage was fraudulent."[34] The central inquiry is whether the person and his or her spouse intended to establish a life together at the time they married.[35]

The "substantial and probative evidence" standard "refers to the quality and quantity of competent, credible, and objective evidence."[36] "Given that the consequences of engaging in marriage fraud under [INA § 204(c)] is a permanent bar to the approval of any future visa petition, the evidence of fraud must be relatively high to trigger the bar."[37] The proof required is "higher than a preponderance of the evidence and closer to clear and convincing evidence . . . the evidence must establish that it is more than probably true that the marriage is fraudulent."[38] Both direct and circumstantial evidence may be considered.[39]

When the government has established "substantial and probative evidence" of marriage fraud, the burden shifts to the petitioner to show that the beneficiary's prior marriage was entered into in good faith.[40]

### III. Discussion

In this case, there is not substantial and probative record evidence, either direct or

---

[33] 8 U.S.C. § 1154(c) (INA § 204(c)).
[34] 8 C.F.R. § 204.2(a)(1)(ii).
[35] *Matter of Laureano,* 19 I&N Dec. 1, 2-3 (BIA 1983); *Matter of McKee,* 17 I&N Dec. 332 (BIA 1980).
[36] *Matter of Singh,* 27 I&N Dec. 598, 606 (BIA 2019).
[37] *Id.* at 607.
[38] *Id.*
[39] *Id.* at 608.
[40] *See id.* at 605; *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 805 (9th Cir. 2020).

- 5 -

Case No. 1:21-cv-01701
GWIN, J.

circumstantial, that the Polanco – Made marriage was fraudulent. Therefore, the USCIS's and Board's decision denying Petitioners' Form I-130, Petition for Alien Relative on that ground is arbitrary and capricious.

Substantial and probative direct evidence of marriage fraud may consist of "[a] sworn statement by the parties admitting that the marriage is fraudulent, that money changed hands, [or] that the couple did not intend to live together or consummate the marriage."[41] Here, the record includes no direct evidence of marriage fraud.

Polanco and Made both stated in sworn affidavits that they married with the intent to start a life together but that their marriage fell apart due to financial stress, arguments, and Made's infidelity.[42] There is no evidence that money exchanged hands, that the marriage was never consummated, or that they never resided together. Notably, USCIS did not perform a field visit.

Circumstantial evidence is only sufficient where "the quality and quantity of the circumstantial evidence . . . create[s] such a strong inference of fraud that it rises to the level of substantial and probative."[43] A "reasonable inference" from the evidence of record that the beneficiary entered into a fraudulent marriage "does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c) of the Act."[44]

The circumstantial evidence relied upon by USCIS and the Board does not rise to the level of substantial and probative evidence of fraud.

USCIS and the Board emphasized that Polanco had two children with Tejeda prior to

---

[41] *Matter of Singh*, 27 I&N Dec. at 607.
[42] Doc. 14-1 at 52-54, 62-64, 227-228.
[43] *Matter of Singh*, 27 I&N Dec. at 608.
[44] *Matter of Tawfik*, 20 I&N Dec. 166, 168 (BIA 1990).

- 6 -

Case No. 1:21-cv-01701
GWIN, J.

and during his marriage to Made, but did not have children with Made. Polanco, however, did not father his two children with Tejeda while he was in a relationship with Made.

Polanco's first child with Tejeda was conceived in 2006 prior to meeting Made, and his second child with Tejeda was conceived after Polanco and Made separated. Polanco and Made separated because of Made's infidelity. While relevant, "evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered."[45] "Couples separate, temporarily and permanently, for all kinds of reasons that have nothing to do with any preconceived intent not to share their lives, such as . . . domestic difficulties."[46]

USCIS also said that Polanco failed to show joint tenancy, property ownership, or comingled financial resources with Made.[47] This conclusion, however, is not supported by the record evidence. Polanco and Made jointly filed tax returns and had a joint bank account while they were married.[48] Joint income tax forms and bank accounts are evidence of a bona fide marriage.[49]

Therefore, there is not substantial and probative evidence in the record that Polanco and Made's marriage was fraudulent. USCIS's and the Board's decision denying Petitioners' Form I-130 was therefore arbitrary and capricious.

IV. Conclusion

For the foregoing reasons, the Court **ORDERS** Defendants to vacate the decision

---

[45] *Bark v. Immigr. & Naturalization Serv.*, 511 F.2d 1200, 1202 (9th Cir. 1975).
[46] *Id.*
[47] Doc. 14-1 at 28.
[48] *Id.* at 63, 68-92, 240-245.
[49] *See Matter of Phillis*, 15 I&N Dec. 385, 387 (BIA 1975) (joint income tax forms and bank accounts are proof of a bona fide marriage); *Matter of Laureano*, 19 I&N Dec. 1, 3 (BIA 1983) (joint bank accounts are probative evidence of a joint marriage).

Case No. 1:21-cv-01701
GWIN, J.

denying Plaintiffs' Form I-130, Petition for Alien Relative and find Petitioner Polanco's prior marriage was bona fide.

    IT IS SO ORDERED.

Dated: July 26, 2022            *s/    James S. Gwin*
                                                                       JAMES S. GWIN
                                                                       UNITED STATES DISTRICT JUDGE